UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| JOSE ANTONIO NEGRETE RAMIREZ,<br><br>*Petitioner*,<br><br>v.<br><br>KRISTI NOEM, Secretary of the United States Department of Homeland Security, et al.,<br><br>*Respondents*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)  No. 1:25-cv-00206-CMS<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER DENYING**
**PETITION FOR WRIT OF HABEAS CORPUS**

Jose Antonio Negrete Ramirez, a citizen of Mexico, has lived in the United States for 19 years but has never been lawfully admitted into the country. *See* (Doc. 1 at 4); *see also* (Doc. 9 at 1). He is currently detained, awaiting immigration proceedings. (Doc. 9 at 1). Negrete Ramirez petitions the Court for a writ of habeas corpus, asking the Court to order Respondents (collectively, "the Government") to either release him or give him an individualized bond hearing, in addition to other relief. (Doc. 1 at 18–19). The parties disagree over which section of Title 8 governs Negrete Ramirez' case, Section 1225(b)(2) or Section 1226(a). (Doc. 1 at 10); (Doc. 9 at 4–5). If Section 1225(b)(2) governs, then the Government must detain Petitioner without bond. If Section 1226(a) governs, then an individualized bond hearing may be permitted in some circumstances.

1

For the reasons stated below, Section 1225(b)(2) dictates the outcome of this case and requires detention of Petitioner Negrete Ramirez without bond pending his immigration proceedings. The Court denies the petition for a writ of habeas corpus. (Doc. 1).

**Factual Background**

The facts are not in dispute. Negrete Ramirez is neither a citizen nor a national of the United States. (Doc. 1 at 4). He is a citizen of Mexico. *Id.* He entered the United States without inspection in 2006 and has been in the United States ever since. *Id.* at 1. Immigration and Customs Enforcement detained Negrete Ramirez on November 6, 2025, and he has been in custody since that date. *Id.* at 2. He did not request expedited consideration prior to his hearing before the Kansas City Immigration Court on December 15, 2025. He is currently being detained by Immigration and Customs Enforcement at the Ste. Genevieve, Missouri, Detention Center. *Id.* at 1.

Negrete Ramirez filed this petition on December 3, 2025, asserting that his detention violates his rights to due process under the United States Constitution and the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq. Id.* at 2. He requests the following relief: an order granting his immediate release; an order prohibiting the Government from transferring him out of the Eastern District of Missouri or the Eighth Circuit during the pendency of the proceedings; a declaration that his detention violates the Due Process Clause of the Fifth Amendment; a temporary restraining order either requiring his release and enjoining his continued detention or requiring the Government to show cause why his petition should not be granted; an order

setting a bond hearing within seven days; an award of reasonable attorneys' fees and costs; and any further relief the Court deems just and proper. *Id.* at 18–19.

**Analysis**

*8 U.S.C. § 1225 Applies to Petitioner Negrete Ramirez*

As the Supreme Court has noted, "'[h]abeas is at its core a remedy for unlawful executive detention.'" *Dept. of Homeland Sec'ty v. Thuraissigiam*, 591 U.S. 103, 119 (2020) (quoting *Munaf v. Geren*, 553 U.S. 674, 693 (2008)) (alteration in original). Petitioner Negrete Ramirez asks the Court to order his release or, alternatively, that he be granted an individualized bond hearing under the framework of 8 U.S.C. § 1226(a). *See* (Doc. 1 at 19).

The dispositive question is whether Section 1225(b)(2) or Section 1226(a) governs Negrete Ramirez' detention. While the latter section generally permits bond, the former does not: "aliens falling within the scope of § 1225(b)(2) 'shall be detained for a [removal] proceeding.'" *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018) (quoting 8 U.S.C. § 1225(b)(2)) (alteration in original).

The Government argues that Section 1225(b)(2) applies in this case. That section requires, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). According to the United States Supreme Court, "[r]ead most naturally, §§ 1225(b)(1) and (b)(2) . . . mandate detention of applicants for admission until

3

certain proceedings have concluded." *Jennings*, 583 U.S. at 297.

By contrast, Negrete Ramirez argues that Section 1226(a) applies. Section 1226(a) provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." Section 1226(a)(2)(A) further allows that the Attorney General "may" release the alien on bond. *Jennings*, 583 U.S. at 303 ("Section 1226(a) also permits the Attorney General to release those aliens on bond").

When interpreting a statute, the Court begins "with the statute's plain language, giving words the meaning that proper grammar and usage would assign them." *Union Pac. R.R. Co. v. Surface Transp. Bd.*, 113 F.4th 823, 833 (8th Cir. 2024) (quotation omitted). But "[w]hen a statute includes an explicit definition of a term, we must follow that definition, even if it varies from a term's ordinary meaning." *Van Buren v. United States*, 593 U.S. 374, 387 (2021) (quotation omitted).

Under Section 1225(b)(2), when an alien is "an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained." The question is whether Negrete Ramirez is an "applicant for admission" as defined by Section 1225, as he does not assert that an immigration officer determined that he is "clearly and beyond a doubt entitled to be admitted."

Under Section 1225(a)(1), "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of this chapter an applicant for admission." Negrete Ramirez is an "alien" because he is a

4

citizen of Mexico. (Doc. 1 at 1). He is, admittedly, "present in the United States." *Id.* at 4. He "has not been admitted" according to Section 1225(a)(1) because he did not "lawful[ly] ent[er] . . . into the United States after inspection and authorization by an immigration officer," Section 1101(a)(13)(A) (defining "admission" and "admitted"). The Supreme Court in *Jennings*, 583 U.S. at 287, noted that, under Section 1225, "an alien who 'arrives in the United States,' or 'is present' in this country but 'has not been admitted,' is treated as 'an applicant for admission.'" Thus, according to the plain language of the statute, Negrete Ramirez is "an applicant for admission," Section 1225(b)(2)(A) applies, and he is not entitled to a bond hearing.

Negrete Ramirez nonetheless maintains that Section 1225(b)(2) should not apply because he has been present in the country for a long period of time and therefore is not "seeking admission." (Doc. 1 at 13). Negrete Ramirez points to cases from other districts that interpret this phrase to require "present tense action." *Id.*; *see also, e.g.*, *Alejandro v. Olson*, No. 1:25-cv-02027-JPH-MKK, 2025 WL 2896348, at *7 (S.D. Ind. Oct. 11, 2025) ("The phrase 'seeking admission,' accordingly, means that a noncitizen must be actively 'seeking' 'lawful entry.'"). In other words, Petitioner argues Section 1225 "does not apply to noncitizens 'already present in the United States' . . . ." (Doc. 1 at 13–14) (quoting *Jennings*, 583 U.S. at 303).

Negrete Ramirez' argument fails for several reasons. First, two cases in this District recently addressed precisely this issue and rejected the same argument. *See Mejia Olalde v. Noem*, No. 1:25-CV-00168-JMD, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025); *Suarez v. Noem*, No. 1:25-CV-00202-JMD, 2025 WL 3312168 (E.D. Mo.

5

Nov. 28, 2025). Other district courts to consider the issue, but not all, likewise have decided that Section 1225(b)(2) applies. *See, e.g.*, *Chavez v. Noem*, 801 F.Supp.3d 1133, 1140 (S.D. Cal. 2025); *but see Eshdavlatov v. Arnott*, No. 25-00844, 2025 WL 3217838 (W.D. Mo. Nov. 18, 2025).[1] This Court agrees with the prior decisions of this District and of the other courts holding that Section 1225(b)(2) applies in this circumstance.

As the court concluded in *Mejia Olalde*, "to 'seek' is a synonym of to 'apply' for." *Id.* at *3 (citing *Apply (for)*, Merriam-Webster, https://www.merriam-webster.com/thesaurus/apply%20for (last visited Nov. 6, 2025)). As already stated, Negrete Ramirez definitionally is an "applicant for admission" under Section 1225(a)(1). As an "applicant for admission," Negrete Ramirez is also "seeking admission" within the meaning of Section 1225(b)(2)(A). This is so despite that Congress used slightly different terminology with the phrases "seeking admission" and "applicant for admission." *See Mejia Olalde*, 2025 WL 3131942, at *3 (quoting William N. Eskridge, Jr., *Interpreting Law: A Primer on How to Read Statutes and the Constitution* 111 (2016) ("reasoning that 'meaningful variation of terminology within a statute ought not be as powerful a consideration as ordinary meaning' and concluding that 'the Legislature is not required to be overly repetitive in its choice of language'")).

---

[1] Recently, the Board of Immigration Appeals also interpreted Section 1225(b)(2) to apply to an alien who had resided in the United States for over two years. *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 228 (BIA 2025). Applying Section 1225(b)(2), the Board determined that an immigration judge lacked authority to hold a bond hearing for that alien. *Id.*

Also, under Section 1225(a)(3), titled "Inspection," "[a]ll aliens . . . who are applicants for admission or *otherwise* seeking admission . . . shall be inspected by immigration officers" (emphasis added). The implication of the word "otherwise," which is defined as "1: in a different way or manner: DIFFERENTLY," *Otherwise*, *Webster's Third New International Dictionary* (2002), is that being an applicant for admission is another way of "seeking admission." Thus, the context of Section 1225 also supports the interpretation of "applicant for admission" as synonymous with an alien "seeking admission." *See Mejia Olalde*, 2025 WL 3131942, at *3.

Further, Section 1225(b)(2) includes no time limit. If Congress intended that an alien no longer is "seeking admission" after some amount of time in the United States, it could have said so. *See id.* at *4. As in *Mejia Olalde*, this Court will not insert into a statute an "arbitrary time limit" where none is provided. *Id.* (quoting *Jennings*, 583 U.S. at 304).

Negrete Ramirez next argues that applying Section 1225(b)(2) to him would upend decades of agency practice. (Doc. 1 at 8). This Court need not defer to agency practice when the agency acts outside its statutory authority. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412 (2024). The regulation cited by Negrete Ramirez, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997), states, "Despite being *applicants for admission*, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination." *Id.* (emphasis added). The regulation first designates aliens like Negrete Ramirez "applicants for admission," then purports to render such aliens "eligible for bond." *Id.* The regulation

7

clearly contravenes the plain language of Section 1225(b)(2) that "an applicant for admission . . . shall be detained." Suffice it to say this Court, in exercising its independent judgment, will not adopt an agency's interpretation so obviously contrary to the plain meaning of the statute. *See Loper Bright Enters.*, 603 U.S. at 412–13.

Finally, Negrete Ramirez claims that applying Section 1225(b)(2) here would render portions of The Laken Riley Act, a recent amendment to Section 1226, superfluous. (Doc. 1 at 14). The Laken Riley Act added another category of alien that the Attorney General "shall take into custody": "any alien who—(E)(i) is inadmissible under paragraph (6)(A) . . . of this title; and (ii) is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute" certain specified crimes. 8 U.S.C. § 1226(c)(1)(E); 8 U.S.C. § 1182(a)(6)(A). Petitioner argues the Act would have no effect if aliens who have not been admitted are already subject to custody under Section 1225(b)(2). (Doc. 1 at 15). That argument fails.

Again, this argument was rejected in *Mejia Olalde*, 2025 WL 3131942. The first and most convincing reason that a proper reading of Section 1225 does not render the Laken Riley Act superfluous is that the latter "may apply to situations where [Section] 1225 might not." *Id.* at *4. For instance, an individual who has been admitted by fraud would not be an "applicant for admission" under Section 1225(a), which applies only to individuals who have "not been admitted" *See Mejia Olalde*, 2025 WL 3131942, at *4 (quoting Section 1182(a)(6)(C)(i) ("'Any alien who, by fraud . . . has procured . . . a visa, other documentation, or *admission* into the United

8

States . . . is inadmissible.'")) (emphasis added). The Laken Riley Act, on the other hand, "may require that person to be detained even if [Section] 1225 would not apply." *Id.*

Second, as explained in *Mejia Olalde*, 2025 WL 3131942, at *4, "even assuming there were surplusage, that cannot trump the plain meaning of [Section] 1225(b)(2)." According to the Supreme Court, "'when confronted with a choice between an interpretation that honors a statute's plain meaning but produces surplusage, and an interpretation that ignores the plain meaning but avoids surplusage, there is no choice at all—the plain meaning must control.'" *Id.* (quoting *Artola v. Garland*, 996 F.3d 840, 844 (8th Cir. 2021)).

For all of these reasons, Section 1225(b)(2) applies, and Petitioner Negrete Ramirez must be detained pending removal proceedings.

*Petitioner's Detention Does Not Violate
the Fifth Amendment to the United States Constitution*

Negrete Ramirez briefly argues for a declaratory judgment that his detention without an individualized custody determination violates the Due Process Clause of the Fifth Amendment. (Doc. 1 at 17–18). Though the Due Process Clause applies to aliens "whether their presence here is lawful, unlawful, temporary, or permanent," *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), the Supreme Court has approved mandatory detention of deportable criminal aliens pending removal proceedings, *Demore v. Kim*, 538 U.S. 510, 527–28 (2003).

Petitioner's argument relies heavily on the Supreme Court's decision in

9

*Zadvydas*, 533 U.S. at 690. (Doc. 1 at 17). But *Zadvydas* is distinguishable here on the same basis the Supreme Court distinguished it in *Demore*, 538 U.S. at 527–28. In *Zadvydas*, unlike here and in *Demore*, the Court dealt with the possibly indefinite detention of an alien whose "removal was 'no longer practically attainable.'" *Id.* at 527 (quoting *Zadvydas*, 533 U.S. at 690).

Though *Demore* involved mandatory detention of a criminal alien under Section 1226(c), its rationale holds true in this case. First, this Court is following the mandate of Congress in Section 1225 that "applicants for admission" shall be detained. *See* 8 U.S.C. § 1225(b)(2); *see also Demore*, 538 U.S. at 528. Second, like *Demore* and unlike *Zadvydas*, Negrete Ramirez' detention pending removal proceedings will be of a short duration, and certainly is not "'indefinite' and 'potentially permanent.'" *Demore*, 538 U.S. at 528. Thus, here, as in *Demore*, "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Id.* at 531. The Government has not denied Petitioner due process by detaining him without a bond hearing pending removal proceedings.

## Conclusion

Petitioner Negrete Ramirez' detention is mandated by Section 1225(b)(2) and does not violate the Due Process Clause of the Fifth Amendment. He is lawfully detained pending removal proceedings.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's petition for a writ of habeas corpus (Doc. 1) is **DENIED**.

Dated this 30th day of January, 2026.

_____
CRISTIAN M. STEVENS
UNITED STATES DISTRICT JUDGE